COURT OF APPEALS
DECISION
DATED AND FILED

January 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP472**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV1552**

**IN COURT OF APPEALS
DISTRICT II**

ESTATE OF LEON LUTERBACH, LAURA BOWEN AND DARREN J. LUTERBACH,

    PLAINTIFFS-APPELLANTS,

  V.

ACE REDI-MIX, INC., DALE LUTERBACH AND DOUGLAS D. LUTERBACH,

    DEFENDANTS-RESPONDENTS.

APPEAL from a judgment and an order of the circuit court for Waukesha County: WILLIAM DOMINA, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in Wis. Stat. Rule 809.23(3).**

¶1     PER CURIAM.  Darren Luterbach, Laura Bowen, and the Estate of Leon Luterbach (together, the "Minority Shareholders") appeal from a judgment dismissing their breach of fiduciary duty claim and from an order denying their motion for reconsideration.  Darren and Laura, who are shareholders in Ace Redi-Mix, Inc., assert that the trial court erred by not finding several year-end payments made by Ace to two other shareholders, Dale Luterbach and Douglas Luterbach, to be distributions of corporate profits.  We affirm.

¶2     Ace is a Wisconsin subchapter S corporation that operates a concrete ready-mix business.[1]  After the death of Ace's then-president Leon Luterbach in April 2016, his two children, Darren and Laura, were assigned equal portions of Leon's 45 percent ownership interest in Ace (22.5 percent each).  Darren and Laura remain shareholders of Ace but are not employees, officers, or directors of the company.  Dale Luterbach, Leon's brother, holds a 45 percent ownership interest in Ace and serves as the company's president and sole director.  Dale's son, Doug Luterbach, owns the remaining 10 percent of shares and is Ace's vice president and an employee of the company.  Doug also served on the company's board of directors from 2014-2020.

¶3     The Minority Shareholders' claim arises out of certain year-end payments Ace made to Dale and Doug from 2016 to 2021.  The Minority Shareholders allege that these payments "constitute[] undeclared dividends or other distributions of corporate profits" and that Dale and Doug had breached their

---

[1] A subchapter S corporation under the Internal Revenue Code generally "does not pay dividends from corporate profits, but rather, passes-through its profits to the shareholders on a *pro rata* basis." ***Jorgensen v. Water Works, Inc.***, 2001 WI App 135, ¶11, 246 Wis. 2d 614, 630 N.W.2d 230.

fiduciary duties by not "distribut[ing] an equal pro-rata share of dividends and distributions" to the Minority Shareholders.[2]

¶4      Over the course of a two-day bench trial, the trial court focused on the nature of these year-end payments, which ranged from between $100,000 and $150,000 each year for Dale and between approximately $20,000 and $75,000 each year for Doug.  The court heard testimony from Darren, Laura, Dale, Doug, Keith Prince, Ace's accountant from 1995-99 and 2013-present, and Joel Nettesheim, a certified public accountant called by the Minority Shareholders as an expert witness.

¶5      Following the presentation of evidence, the trial court delivered an oral ruling in which it found that the payments were the result of a "business process … based upon a primary effort to provide a fair wage to the employees, including those employed and also serving as officers and directors of the corporation."  The court concluded that the Minority Shareholders had not carried their burden of proving that the payments were, in fact, distributions of profits in which they were entitled to share.  The Minority Shareholders filed a motion for reconsideration, arguing that the court had improperly focused on the process Ace used to determine the payments, rather than the fact that the payments were based on Ace's profitability in a given year rather than Dale's and Doug's performance.  The court denied the motion, and this appeal followed.

---

[2]  The Minority Shareholders raised other claims against Ace, Dale, and Doug, including a derivative claim for excessive compensation based on the bonus payments, that were dismissed before trial.  The parties agree that the only claim that proceeded to trial was a claim for breach of fiduciary duty.  They appear to agree this claim is based on the Minority Shareholder's contention that profits, under the guise of bonus payments, were paid to the majority shareholders, but not to them.  The circuit court determined this claim was a direct claim.  The parties also agree that resolution of this case centers on whether the payments were bonuses or profits.

¶6      Under Wisconsin law, directors of a corporation owe a fiduciary duty of good faith and fair dealing to the corporation's shareholders. ***Yates v. Holt-Smith***, 2009 WI App 79, ¶19, 319 Wis. 2d 756, 768 N.W.2d 213. That fiduciary duty requires directors to refrain from "us[ing] their position of trust to further their private interests." ***Jorgensen v. Water Works, Inc.***, 2001 WI App 135, ¶10, 246 Wis. 2d 614, 630 N.W.2d 230 (citation omitted). A director may breach this duty by treating shareholders differently and inequitably by, for example, causing the corporation to pay distributions of profits to some shareholders but not others. *See id.*, ¶18.[3]

¶7      Whether a director has breached a fiduciary duty to a shareholder presents a mixed question of law and fact. *Id.*, ¶8. We review a trial court's factual findings deferentially and will not disturb them unless they are clearly erroneous, WIS. STAT. § 805.17(2) (2021-22),[4] but whether those findings establish a breach of fiduciary duty presents a question of law that we review de novo, ***Jorgensen***, 246 Wis. 2d 614, ¶8. A finding of fact is clearly erroneous if "the evidence for a contrary finding itself constitutes the great weight and clear preponderance of the evidence." ***Dickman v. Vollmer***, 2007 WI App 141, ¶15, 303 Wis. 2d 241, 736 N.W.2d 202.

¶8      The Minority Shareholders' arguments on appeal focus on the nature of the payments received by Doug and Dale. Whether the payments are a

---

[3] Although a subchapter S corporation may distribute profits to its shareholders, it is not required to do so. *See* 18B AM. JUR. 2D *Corporations* § 1083 (2023); ***Harrison v. Harrison***, 949 N.W.2d 369, 383 (Neb. Ct. App. 2020). "Earnings are owned by the corporation, not by the shareholders…. Subchapter S corporations may accumulate profits, referred to as 'retained earnings.'" ***Harrison***, 949 N.W.2d at 383. However, where a distribution has been approved by a majority of the shareholders, the distribution must be distributed to all the shareholders. *See* ***Jorgensen***, 246 Wis. 2d 614, ¶18. Again, the only issue here is whether the bonuses were an unequal distribution.

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

distribution of profits or year-end performance bonuses is a question of fact, subject to our clearly erroneous standard of review. *See **Jorgensen***, 246 Wis. 2d 614, ¶¶12-19 (examining trial court's findings of fact concerning the nature of payments to corporate directors and officers).

¶9      Initially, the Minority Shareholders contend the trial court did not make any finding of fact as to whether the payments were profit distributions or bonuses that were part of Dale's and Doug's compensation. We disagree. The court specifically identified this as the key issue in its oral ruling when it stated that Darren and Laura had the burden to prove that Dale and Doug "had distributed what were otherwise profits of this closely held S [c]orporation under the guise of bonuses and wages to enrich themselves rather than share that with minority shareholders who were not employed by Ace Redi-Mix." The court then summarized the evidence presented, noting in particular Prince's testimony that Ace's "process of payment of bonuses dependent upon your performance was not a new practice but was a practice which extended well over 20 years in the past … almost to the very beginnings of this entity." The court then explained that a breach of fiduciary duty did not exist merely "because there are payments of bonuses for employees who accept a lower base wage in order to see what kind of year it's going to be." It found that the payments were part of a "business process.… based upon a primary effort to provide a fair wage to the employees" and concluded that the Minority Shareholders had not carried their burden of proving that they had been treated unfairly when they did not receive similar year-end payments. The court repeatedly characterized the payments as "bonuses" linked to Ace's annual performance. From these statements, it is apparent that the court's conclusion that the Minority Shareholders had not established a breach of fiduciary duty rested on its finding that the payments were in fact bonuses, not distributions of profit.

¶10     The Minority Shareholders next argue that the "undisputed evidence" presented at trial shows that the payments were distributions of profit rather than year-end bonuses.  The Minority Shareholders highlight certain evidence presented at trial to support their argument, including:  (1) testimony from Dale and Prince that the amounts of each year's payments were based on Ace's year-end cash on hand; (2) Dale's acknowledgement that the amount of the payments depended on Ace's profitability in a given year; (3) Ace's lack of "a bonus policy to measure employee performance"; and (4) Dale's and Doug's admissions that their performance at Ace is not reviewed in connection with the setting of the payment amounts.  These portions of trial testimony are not sufficient to show that the trial court clearly erred in finding the payments to be part of Doug's and Dale's compensation.  Evidence supportive of each characterization was presented at trial, and the Minority Shareholders cannot show clear error merely by emphasizing the evidence that supports their view.

¶11     In its oral ruling, the trial court summarized Prince's testimony, which it found credible, as to the process he and Ace undertook to determine the year-end payments:

> Mr. Prince testified that on an annual basis he would meet with the controlling shareholders and their supportive team … and other than the base wage the very first thing that would be discussed would be whether or not there should be the payment of bonuses to certain employees.  Mr. Prince testified that that listing of potential recipients of employees of [Ace] was bigger or broader than the two controlling shareholders Doug and Dale Luterbach in this case.
>
> … He also testified that the process of payment of bonuses dependent upon your performance was not a new practice but was a practice which extended well over 20 years in the past to the very—almost to the very beginnings of this entity or at least when there became more than one head of the entity.

Dale confirmed that Ace made year-end payments to several nonshareholder employees, including its dispatcher, mechanic, and secretary. He confirmed that those payments were made to the employees because of their importance to Ace, the company's desire to retain them, and in light of the company's performance that year. Prince testified similarly that the payments were based on the company's performance. Prince explained that because the ready-mix industry was a seasonal business, the company paid Dale and Doug (and before he died, Leon) a base salary and then waited until the end of the year to issue performance bonuses. This was prudent given the nature of the business and it allowed for a delay in compensation to allow for a full evaluation of the company's performance.

¶12    We defer to the trial court's credibility determination, *State v. Vollbrecht*, 2012 WI App 90, ¶27, 344 Wis. 2d 69, 820 N.W.2d 443, and given the evidence tending to show that the payments were intended to reward Dale, Doug, and the other employees for Ace's performance, we cannot say the court clearly erred in finding the payments to be year-end bonus compensation rather than distributions of profit.

¶13    The Minority Shareholders argue that our decision in *Jorgensen* compels reversal. Again, we disagree. In *Jorgensen*, minority shareholders brought suit against majority shareholders-directors for causing a corporation to stop making regular payments to the minority shareholders after they were removed as officers and directors. *Jorgensen*, 246 Wis. 2d 614, ¶¶3-4. The trial court found that these payments "were not based on work performed for the corporation but instead were distributions related to profits." *Id.*, ¶12. On appeal, we declined to disturb this finding given the evidence in the trial record that supported it. *Id.*, ¶¶12-15, 18. Here, in contrast, the trial court found that the year-end payments were not based on profits but on services performed for the company by Dale, Doug, and the other employees who received them. The Minority Shareholders have not shown that the

7

great weight and clear preponderance of the evidence supports a contrary finding. Thus, *Jorgensen* does not control this case.

¶14    The Minority Shareholders' reliance on *Yates*, 319 Wis. 2d 756, is unavailing for similar reasons. That case involved a dispute between two owners of a financial services company, each of whom was an officer, director, and shareholder. *Id.* ¶¶1, 3. Yates sued Holt-Smith for breach of fiduciary duty, asserting that Holt-Smith withheld a year-end bonus to which Yates was entitled. *Id.*, ¶1. Upon review, we refused to disturb a trial court finding that the year-end payment was based on the firm's profits and therefore a constructive dividend. *Id.*, ¶¶15, 17 ("It is apparent that the year-end payments were based on HSYA's profits each year and were paid to Yates and Holt-Smith based on their ownership interests."). We specifically noted the absence of "evidence suggesting the payments were based on the relative contributions or productivity of either party" or "were used as an incentive to retain either party's services." *Id.*, ¶17.[5] The opposite is true here: the record contains evidence that the year-end payments were tied to performance and used as an incentive to retain the services of certain

---

[5]  Citing *Yates v. Holt-Smith*, 2009 WI App 79, 319 Wis. 2d 756, 768 N.W.2d 213, the Minority Shareholders also argue that a bonus must be linked to a specific employee's performance. In *Yates*, we concluded only that the trial record did not contain evidence that "the payments were based on the relative contributions or productivity of either party." *Id.*, ¶17. *Yates* does not stand for the proposition that year-end payments to corporate employees that are based on the corporation's performance as a whole, rather than each employee's individual performance, cannot be considered bonuses. The Minority Shareholders provide no authority holding that bonuses based on the company's performance as a whole, reflecting the labor and contributions of the employees, officers, and directors of a small closely held corporation, are necessarily profit.

nonshareholder employees.[6] Therefore, the trial court did not clearly err in finding the payments to be bonuses and properly entered judgment dismissing the breach of fiduciary duty claim as a matter of law.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. Rule 809.23(1)(b)5.

---

[6] Given our conclusion that the Minority Shareholders have not shown that the trial court clearly erred in finding the payments to be year-end bonuses, we need not address the alternative basis for affirmance advanced by Ace, Doug, and Dale that the Minority Shareholders lack standing to assert a breach of fiduciary duty claim to the extent the claim is one for excessive contribution, a derivative rather than direct claim. *See Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605 ("[W]e need not address all arguments raised by the parties if one of those arguments is dispositive.").