The ESTATE OF James F. SHEPPARD, by
Michael E. McMorrow, Personal Representative,
Plaintiff-Appellant,†

v.

William F. SPECHT, Defendant-Respondent,

COUSINS SUBMARINES, INC. and
Cousins Subs Systems, Inc., Defendants.

Court of Appeals

*No. 2011AP2534. Submitted on briefs August 31, 2012.
—Decided October 17, 2012.*

2012 WI App 124

(Also reported in 824 N.W.2d 907.)

† Petition for review filed.

697

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Charles P. Graupner* and *Miriam S. Fleming* of *Michael Best & Friedrich LLP* of Milwaukee, and *Michael E. McMorrow*, co-counsel, of Mequon.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Dean P. Laing* of *O'Neil, Cannon, Hollman, DeJong & Laing S.C.* of Milwaukee.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. BROWN, C.J.   This is a dispute between a fifty-percent shareholder in two closely held corporations and the Estate of the other fifty-percent shareholder. The shareholders were negotiating the sale of their shares to a third party when one of the shareholders died. Negotiations between the surviving shareholder and the potential buyer broke off. The Estate sued the surviving shareholder for breach of his alleged fiduciary duty as a fifty-percent shareholder and as a director, claiming that the shareholders had agreed to sell if a buyer met a certain price, that the third party had met the price, but that the surviving shareholder reneged by refusing to sell. Like the circuit court, we hold that the alleged agreement between the two shareholders to sell the stock for a specific price was too vague and uncertain to be enforceable. With the premise of a valid agreement between the two shareholders gone, there can be no claim for breach of a fiduciary duty, either as director or shareholder, for failure to sell at the supposedly agreed price. Furthermore, in Wisconsin, a fifty-percent shareholder does not owe a fiduciary duty to the other fifty-percent shareholder. Finally, the Estate's claimed damages are too speculative to support its cause of action. We affirm the circuit court's grant of summary judgment.[1]

---

[1] In addition to granting summary judgment to William Specht on the liability and damage claims, the trial court granted summary judgment to the Estate on its claim that a

¶ 2.   William Specht and James Sheppard each owned fifty percent of the shares of Cousins Submarines, Inc., and Cousins Subs Systems, Inc., which we will refer to collectively as Cousins. Due to increased competition in the market, Sheppard and Specht began looking for a buyer for Cousins in 2006. The Estate claims that Sheppard and Specht had an agreement to sell Cousins for $12 million, if they got such an offer. The existence and terms of this agreement are in dispute, and we will discuss it later. Sheppard and Specht were in negotiations to sell Cousins to Crosslane, a British firm, when Sheppard died. As part of the negotiations, the parties had entered into a Memorandum of Understanding with Crosslane, which we will also discuss later. After Crosslane changed the terms of the deal several times, Specht broke off negotiations. Specht offered to buy the Estate's shares for $3,174,080, which the Estate rejected. Further negotiations between the Estate and Specht did not produce a deal. According to the Estate, Specht broke off the deal with Crosslane so that he could buy out the Estate's shares at a discounted price and turn around and sell them to Crosslane. The Estate sued Specht on various theories, including breach of fiduciary duty as a shareholder and a director. Specht moved for summary judgment, which the court granted.

¶ 3.   The Estate appeals, alleging the trial court erred in the following three aspects of its ruling. First, the trial court ruled that Specht did not have a fiduciary duty to the Estate, neither as a fifty-percent shareholder nor as a director. Second, the trial court ruled that the alleged agreement to sell stock in the company

shareholder deadlock existed, *see* Wis. Stat. § 180.1430(2)(c). The shareholder deadlock portion of the trial court's ruling is not challenged on appeal.

700

for $12 million was unenforceable. Third, the trial court erred "by ignoring the disputed material facts that show Specht breached his fiduciary duty by terminating the sale of Cousins stock as part of a scheme to usurp the sale from the Estate."

¶ 4. Our review of the trial court's decision on summary judgment is de novo. *Old Tuckaway Assocs. Ltd. P'ship v. City of Greenfield,* 180 Wis. 2d 254, 278, 509 N.W.2d 323 (Ct. App. 1993). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Wis. Stat. § 802.08(2). The purpose of summary judgment is to determine whether there are material facts that need to be tried, so as to avoid unnecessary trials. *Yahnke v. Carson,* 2000 WI 74, ¶ 10, 236 Wis. 2d 257, 613 N.W.2d 102.

¶ 5. The Estate's amended complaint alleged breach of fiduciary duties, as fifty-percent shareholder "controlling all financial and operations aspects" of Cousins and as an officer and director of Cousins, and judicial dissolution of Cousins under Wis. Stat. § 180.1430. The judicial dissolution is not challenged on appeal. We will address the Estate's arguments within the framework of a claim for breach of fiduciary duty. The elements of a claim for breach of a fiduciary duty are: (1) the defendant owes a fiduciary duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of the duty caused the plaintiff's damages. *Berner Cheese Corp. v. Krug,* 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 752 N.W.2d 800. The existence of a duty is a question of law. *Stephenson v. Universal Metrics, Inc.,* 2002 WI 30,

¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158. Whether a duty has been breached is a mixed question of law and fact. *Jorgensen v. Water Works, Inc.*, 2001 WI App 135, ¶ 8, 246 Wis. 2d 614, 630 N.W.2d 230. We will not overturn the circuit court's determination of the facts unless it is clearly erroneous. *Id.* Whether the facts constitute a breach is a question of law. *Id.* Finally, whether the breach caused the plaintiff's damages is a question of fact. *Estate of Cavanaugh by Cavanaugh v. Andrade*, 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996).

*Duty*

¶ 6.   We first address the Estate's assertion that Specht has a fiduciary duty to the Estate because he owns fifty percent of the stock. The Estate argues that Specht is a controlling shareholder and therefore has a fiduciary duty to the Estate, a noncontrolling minority shareholder. Additionally, maintains the Estate, Specht has a fiduciary duty to the Estate because "shareholders of closely held corporations owe each other fiduciary duties similar to those owed by partners." The Estate also points out that in many jurisdictions fifty-percent shareholders do owe each other fiduciary duties and that "Wisconsin law indicates it would find that 50% shareholders owe each other fiduciary duties."

¶ 7.   The trouble with the Estate's arguments is that Specht is not a majority shareholder. Wisconsin law does impose a fiduciary duty from a majority shareholder to a minority shareholder. *Production Credit Ass'n of Lancaster v. Croft*, 143 Wis. 2d 746, 754, 423 N.W.2d 544 (Ct. App. 1988). But this duty has not been extended to nonmajority shareholders. *See Borne*

702

*v. Gonstead Advanced Techniques, Inc.*, 2003 WI App 135, ¶ 28 n.1, 266 Wis. 2d 253, 667 N.W.2d 709 (Lundsten, J., *dissenting in part; concurring in part*) ("We find no support for the proposition that these [nonmajority] shareholders owe a fiduciary duty to other . . . shareholders."). The Estate makes several arguments about why we should expand the current Wisconsin fiduciary duty rule to nonmajority shareholders. While this court has a role in developing the law as it exists, we cannot declare new law; we are mainly an error-correcting court. *State v. Schumacher*, 144 Wis. 2d 388, 407, 424 N.W.2d 672 (1988). "[W]e are duty-bound to apply the law as it presently exists." *Thomas ex rel. Gramling v. Mallett*, 2004 WI App 131, ¶ 20, 275 Wis. 2d 377, 393, 685 N.W.2d 791 (Brown, J., concurring), *aff'd in part and rev'd in part on other grounds*, 2005 WI 129, 285 Wis. 2d 236, 701 N.W.2d 523. Specht had no fiduciary duty to the Estate based on Specht's fifty-percent ownership of Cousins.

¶ 8. The Estate also argues that Specht owed the Estate a fiduciary duty based on his position as a director of Cousins. Indeed, a corporate director owes a fiduciary duty to both the corporation and its shareholders. *Yates v. Holt-Smith*, 2009 WI App 79, ¶ 19, 319 Wis. 2d 756, 768 N.W.2d 213. The duty is one of "good faith and fair dealing in the conduct of corporate business" and "prevents directors from using their position of trust to further their own private interests." *Id.* Specht did owe the Estate a fiduciary duty in his capacity as director.

*Breach*

¶ 9. The Estate alleges that Specht breached his fiduciary duty as a director by "killing the sale negotiations, extending his control of [Cousins], violating his

agreement to sell, carrying on secret negotiations, making a low-ball offer including an erroneous minority discount, all in furtherance of his secret scheme to buy out the Estate cheap and resell to Crosslane at a great personal profit." In its brief, the Estate does not explain what facts support these allegations. Rather, the Estate's brief is almost all theory, not fact. We view the above-quoted statement by the Estate as part and parcel of its theory that Specht had a Machiavellian plan to buy the Estate's stock short and turn around and sell it to Crosslane. The sole factual allegation supporting this theory is that Specht breached a contract to sell if the two shareholders got an offer of $12 million.

¶ 10.   The parties disagree about the nature and existence of the promise to sell at $12 million. The Estate argues that Specht was obligated to sell, and points to two agreements with third parties to shore up its position. First, Specht and Sheppard entered into a written agreement with Cypress Consulting Group, Inc., a business broker, under which Cypress would not be paid a fee unless the purchase price exceeded $12 million.[2] Second, Specht and Sheppard entered into a Memorandum of Understanding (MOU) with Crosslane, under which Crosslane agreed to buy Cousins for $10 million in cash and a $2 million note.

¶ 11.   Neither document shows a promise between the shareholders to sell at $12 million. In fact, neither agreement contains any promise between Specht and Sheppard. Specht and Sheppard entered into the brokerage deal with Cypress, promising to pay Cypress a

---

[2] The actual agreement with Cypress Consulting Group, which was an exhibit to Specht's deposition, was not included in the attached deposition exhibits in the record. We rely on the deposition testimony for the terms of the agreement.

certain commission if the deal turned out to be at least $12 million. Regarding the MOU, it was between Specht and Sheppard, on the one hand, and Crosslane on the other. The conditions of the MOU are expressly non-binding. Paragraph 13 states:

> Save for [exclusivity and confidentiality clauses] which are intended to be legally binding on all parties, it is understood that the foregoing is a statement of present intent and that the rights and obligations of the parties shall only be as set forth in an executed share purchase agreement. In addition, the parties agree that in consideration for the execution of this MOU, the parties do contractually agree that they each waive any rights they may have to bring any claims against the other on any theory of liability arising from this MOU . . . .

The MOU provided that the "[p]urchasers are *prepared* to make an offer for Cousins, subject to contract and due diligence, of $12,000,000," $10 million cash and $2,000,000 deferred. (Emphasis added.) Additionally, the MOU contained several contingencies, such as Crosslane completing due diligence and seeking tax advice. The MOU was a starting point, not a final contract.

¶ 12. The Estate does not cite to anything in the record that shows Specht and Sheppard made a mutual promise to sell at $12 million dollars, much less what the specifics were. For example, did the two shareholders agree that the $12 million dollars would be all cash? If not, how much of the $12 million did the parties agree could serve as an initial cash payment? What term was acceptable for any financed portion? At what rate of interest? What about the corporate debt and accounts receivable? To the extent that the Estate would argue that none of that matters because the two shareholders had an agreement to sell for $12 million dollars no matter how it got into the shareholders' hands, or in

705

what form or how long it would take, the thought of two sophisticated businessmen just simply agreeing on a $12 million dollar bottom line, fill in the blanks later, defies reason. The MOU, a nonfinal agreement in its own right, answers none of these questions. The business brokerage agreement answers none of these questions. Thus, as a matter of law, there was no enforceable promise by Specht to sell his stock in Cousins with Sheppard or the Estate for $12 million. That being so, the Estate has not alleged a breach of Specht's fiduciary duty as a director.

## Causal Damages

¶ 13.   We have already determined that there was a duty but no breach. Thus, the circuit court's grant of summary judgment was appropriate. For the sake of completeness, we pause to comment on the viability of the Estate's damages claim.

¶ 14.   The Estate alleges that Specht engaged in trickery and secret negotiations in an attempt to buy out the Estate's shares and then turn around and sell Cousins to Crosslane. But Specht never sold Cousins. We know that there were further negotiations between the parties after the MOU was executed and that the terms of the deal changed. We do not know if the deal would have ever gone through, even if Specht had continued negotiating. There are too many blanks to be filled in for any damages to be calculated in any meaningful fashion. Even if we had found a breach, the speculative nature of the Estate's damages would have sunk the Estate's cause of action. *State v. Abbott Labs.*, 2012 WI 62, ¶ 58 n.15, 341 Wis. 2d 510, 816 N.W.2d 145 (it is the uncertainty as to the fact of damage, not the amount, which prevents recovery).

¶ 15.   We affirm the circuit court's grant of summary judgment on the issues of breach of fiduciary duty and enforceability of the promise to sell. Seeing as how the dissolution issue is still before the circuit court, we remand to the circuit court for further proceedings, if necessary.

*By the Court.*—Order affirmed and cause remanded.