**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 12, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1651**

**STATE OF WISCONSIN**

Cir. Ct. No. 2013CV517

**IN COURT OF APPEALS
DISTRICT II**

BACKUS ELECTRIC, INC.,

PLAINTIFF-RESPONDENT,

V.

HUBBARTT ELECTRIC, INC., JOHN M. LEPICH AND JOSEPH D. STAUFFER,

DEFENDANTS,

JASON L. HUBBARTT,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Stark, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.  Jason L. Hubbartt appeals a judgment awarding Backus Electric, Inc. $555,562 in compensatory damages and $1,000,000 in punitive damages after a jury found that Hubbartt breached his fiduciary duty to Backus.  Hubbartt argues that:  (1) the circuit court erred by allowing Backus's expert witness to testify; (2) there was insufficient evidence to support the jury's verdict on causation and the amount of damages; (3) the award of punitive damages was unwarranted and excessive; and (4) a new trial is warranted in the interests of justice because the real controversy was not fully tried.  For the reasons that follow, we affirm.

¶2   Don Backus started Backus Electric, Inc. in 1981.  Hubbartt, an electrician, began work for Backus in 1999, and in 2006, was made vice president.  Backus thought of Hubbartt as the son he never had, an heir apparent who would eventually purchase Backus Electric.  The sale of the business was expected to fund the retirement of Don Backus and his wife, Mary Jane.  In 2011 and 2012, Backus and Hubbartt began discussing price, valuation, and financing.  They reached an impasse in 2013.

¶3   In early 2013, Hubbartt set up an email for himself using the domain name of "hubbarttelectric.com."  He began doing electrical work on the side and sent out invoices under the name Hubbartt Electric.  Hubbartt bought three work vans under the name Hubbartt Electric and purchased a commercial property.  He transferred to his personal computer nearly 100 Backus Electric work files.  All of this was unknown to Backus and his wife.

2

¶4      Mary Jane Backus discovered some of Hubbartt's activities on or around April 10, 2013, when she came across a Hubbartt Electric invoice in his Backus work truck.  This led to a confrontation between Don Backus and Hubbartt.  Though Hubbartt told Backus he would continue to work for Backus Electric, he officially formed Hubbartt Electric, Inc. that night, while still employed as Backus's vice president.

¶5      The relationship between Backus and Hubbartt quickly deteriorated. In April 2013, Backus terminated Hubbartt's employment and Hubbartt continued his work at Hubbartt Electric.  Two other Backus employees, John Lepich and Joseph Stauffer, quit Backus and joined Hubbartt Electric.  In a matter of weeks, Hubbartt Electric took Backus's best clients.  The next year, Backus's company shut down.

¶6      Backus filed suit, alleging in pertinent part that Hubbartt breached his fiduciary duty to Backus Electric.[1]  Specifically, Backus claimed that Hubbartt planned or engaged in a competing business while still in Backus's employ and thereafter utilized proprietary information gained through his employment to compete with Backus.

¶7      Prior to trial, Backus named former accountant Stephen Bischel as an expert witness on the issue of damages.  Hubbartt filed a pretrial motion seeking to preclude Bischel's expert testimony.  As grounds, Hubbartt asserted

---

[1] Backus's complaint alleged nine causes of action against Hubbartt and/or Lepich and Stauffer, the two employees that left Backus to work for Hubbartt.  Specifically, the complaint alleged breach of fiduciary duty and duty of loyalty, aiding and abetting a breach of duties, breach of union contract, tortious interference with contractual relationships, unjust enrichment, misappropriation of trade secrets, violation of WIS. STAT. § 134.01 (injury to business), civil conspiracy, and a claim for punitive damages.

that Bischel's method of calculating damages ran afoul of WIS. STAT. § 907.02 (2019-20)[2] and ***Daubert v. Merrell Dow Pharms., Inc***., 509 U.S. 579 (1993), in that it was not based on reliable principles or methods. The circuit court denied the motion, stating:

> In his report Bischel is comparing normalized income for Backus Electric, Inc, for a period of time from June 30, 2010 until June 30, 2013 against a period of time from June 30, 2014 until June 30th 2017. He is using the same methodology and factors in arriving at these figures during this time period. He is not saying that this data shows a loss in profits over this time. All it appears he is doing is pointing out the differences in income utilizing the same factors.
>
> Now Bischel has a vast amount of experience in the CPA field and has testified in over 200 cases involving testimony about loss profits and loss of income and loss of earnings. Clearly with this experience as a CPA he can disseminate and calculate this information.
>
> He can based on his accounting experience attest that this information is accurate.
>
> Therefore under Wisconsin Statute Section 970.02 he may render the opinion contained in his report. He though can be cross examined about his data by the defense as to the weight of his opinion in determining damages.
>
> Now this decision is premised on the fact that the plaintiff has not indicated to this Court that it's going to have Mr. Bischel testify beyond what is contained in his report. If Mr. Bischel's testimony were to venture into testifying that this is a proper measurement for accessing loss of profit damages the Court will have to take a closer look at this.

¶8     At trial, the jury heard from two competing accountants regarding the monetary damage to Backus from Hubbartt's conduct. As stated previously,

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

for Backus, the jury heard from Bischel, a semi-retired certified public accountant with over thirty years of experience valuing businesses, particularly businesses in the construction trade. Bischel had worked as an expert approximately 250 times and testified in court about thirty times. Bischel testified that in order to calculate the amount of damages, he took the revenue from the four years prior to April 10, 2013, and the four years after that date, and compared what the business could have sold for before versus after April 10, 2013, given the precipitous drop in high value clients that were lost to Hubbartt. Bischel calculated the difference to be $552,000. He explained his methodology and indicated that the method he used is the same method he uses when valuing businesses for non-litigation clients. Because the construction trade is a volatile one, he used a shorter four-year period of sales which necessarily drives the price of the business lower.

¶9 Barbara Bader testified as Hubbartt's expert. She did not perform an analysis of the numbers but instead criticized Bischel's methodology, which she called "diminished economic performance." She testified that Bischel's methodology is not a generally accepted method of calculating damages for a loss-of-business case, and took Bischel to task for not analyzing other potential factors that might have contributed to Backus's economic loss.

¶10 The jury found Hubbartt liable to Backus Electric for breach of fiduciary duty, and awarded compensatory damages in the amount of $555,562. The jury also awarded $1,000,000 in punitive damages to Backus Electric.[3] Hubbartt appeals.

---

[3] The jury did not find Hubbartt or the other defendants liable for any other causes of action. The circuit court dismissed Backus Electric's remaining claim for unjust enrichment.

5

*The circuit court properly admitted Bischel's expert testimony.*

¶11    On appeal, Hubbartt maintains that Bischel's testimony did not meet the reliability standard set forth in WIS. STAT. §907.02 and ***Daubert***.  Relying on the testimony and opinions of Bader, Hubbartt asserts that Bischel did not use an accepted method of calculating damages in a loss-of-business case, and that he should have but did not analyze other potential causes of Backus's economic loss.

¶12    The admissibility of expert testimony is governed by WIS. STAT. § 907.02(1), which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

¶13    This version of the statute was enacted to embody ***Daubert***'s reliability standard.  ***State v. Giese***, 2014 WI App 92, ¶17, 356 Wis. 2d 796, 854 N.W.2d  687.  It assigns to the trial court a gate-keeping function "to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues."  ***Id.***, ¶18.  A trial court's decision to admit expert testimony is discretionary and will not be reversed if it has a rational basis and was made in accordance with the accepted legal standards and facts of record.  ***Id.***, ¶16.

¶14    We conclude that the circuit court properly exercised its discretion in admitting Bischel's expert testimony.  The circuit court properly focused on Bischel's experience applying the income approach to valuing businesses both inside and outside of the courtroom.  The data underlying Bischel's opinion was

6

available to Hubbartt's counsel for cross-examination, which made his opinions testable and not conclusory. His analysis was not esoteric; it relied on simple addition and subtraction. Bischel acknowledged the viability of a lost profits analysis, but explained why he considered his diminished economic performance analysis more appropriate on the facts of this case. Given this, the court properly exercised its discretion when it denied Hubbartt's **Daubert** motion.

¶15    Citing the federal statute on expert testimony, Hubbartt maintains that Bischel's diminished economic performance analysis should not have been placed before the jury. We need not look past the plain language in WIS. STAT. § 907.02(1), which is more instructive and was followed in this case. Here, Bischel used "other specialized knowledge" to "assist the trier of fact to understand the evidence or to determine a fact in issue," based upon his "knowledge, skill, experience, training, or education," and thus was permitted to testify "in the form of an opinion or otherwise" because the testimony was "based upon sufficient facts or data," was "the product of reliable principles and methods," and Bischel "applied the principles and methods reliably to the facts of the case." Sec. 907.02(1).

¶16    Contrary to the characterization in Hubbartt's briefs, the circuit court did not abandon its gatekeeper function in admitting Bischel's testimony. The court engaged in a well-reasoned and transparent analysis. It limited the scope of Bischel's testimony, which also was subject to rigorous cross-examination by Hubbartt's counsel and directly criticized by Bader.

*Ample evidence supports the jury's finding that Hubbartt's breach caused Backus's loss.*

¶17    Hubbartt argues that Backus needed expert testimony to prove that his alleged breach caused damage to Backus, and that even if expert testimony was not required to establish causation, there was insufficient evidence at trial to support an inference that Hubbartt's actions caused Backus's loss.

¶18    Whether Hubbartt's breach caused Backus's damage is a question of fact. *Estate of Sheppard ex rel. McMorrow v. Specht*, 2012 WI App 124, ¶5, 344 Wis. 2d 696, 824 N.W.2d 907.  We will "sustain a jury's damage award as long as it is supported by credible evidence." *Tony Spychalla Farms, Inc. v. Hopkins Agr. Chem. Co.*, 151 Wis. 2d 431, 442, 444 N.W.2d 743 (Ct. App. 1989).  To support a damage award, the evidence must demonstrate that a party was injured in some way and establish sufficient data from which the jury could probably estimate the amount of damages. *Id*.

¶19    First, we reject as unsupported Hubbartt's assertion that Backus needed expert testimony to prove causation.  Hubbartt provides no legal authority for and does not adequately develop this contention.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶20    Second, there was ample evidence from which a jury could infer that Hubbartt's breach caused Backus's loss.  Backus Electric is not a large business; a juror could easily infer from the facts of record that the precipitous decline in revenue was due to Hubbartt's actions.

¶21    Hubbartt argues that causation was not established because Bischel did not consider alternative explanations for Backus's precipitous drop in income, such as customer dissatisfaction.  From this, Hubbartt asserts that without testimony about alternative potential causes, the jury's verdict was impermissibly speculative.

8

¶22    We are not persuaded.  Through his own testimony along with the testimony of his codefendants and expert witness, Hubbartt provided the jury with alternative explanations for Backus's lost business.  Bader's testimony criticized Bischel for failing to look at alternative explanations, and Bischel underwent extensive cross-examination.  The jury's verdict shows that it found Backus's witnesses to be more credible than those presented by Hubbartt.  We will not disturb the jury's verdict, which is supported by the evidence of record.

¶23    Hubbartt also argues that the circuit court erroneously excluded evidence of customer overbilling by Backus Electric.  According to Hubbartt, such evidence might have rebutted Backus's theory of causation by providing an alternative explanation for Backus's lost business.

¶24    We disagree.  This court reviews the circuit court's evidentiary rulings for an erroneous exercise of discretion.  Here, the circuit court performed a thorough analysis under WIS. STAT. § 904.03, and explained its reasoning on the record.  Though Hubbartt might disagree with the court's ultimate decision, he has not pointed us to any misuse of discretion.

*The Jury's award of punitive damages is warranted and not excessive.*

¶25    A plaintiff may be awarded punitive damages "if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."  WIS. STAT. § 895.043(3).  The statute requires a plaintiff to prove that the defendant's improper conduct: (1) was deliberate; (2) actually disregarded the rights of the plaintiff, "whether it be a right to safety, health or life, a property right, or some other right;" and

9

(3) was "sufficiently aggravated to warrant punishment by punitive damages." *Strenke v. Hogner*, 2005 WI 25, ¶38, 279 Wis. 2d 52, 70, 694 N.W.2d 296.

¶26 Hubbartt argues that the jury's award of punitive damages was unwarranted because there was insufficient evidence that Hubbartt acted maliciously or with intentional disregard for Backus's rights. We are not persuaded.

¶27 Ample evidence in the record supports an inference that Hubbartt acted maliciously towards Backus or in intentional disregard of Backus's rights. Rather than purchasing Backus Electric, Hubbartt, while its vice president, began a scheme that involved setting up a competing enterprise, purchasing trucks for that competing enterprise, purchasing a location for that competing enterprise, and actually organizing that competing enterprise. Hubbartt went a step further and stole Backus's computer programs to help with his competing enterprise. Hubbartt then coordinated with Backus's two key employees to leave Backus at the same time and began poaching Backus's best clients.

¶28 Hubbartt also took steps to conceal his actions from Backus, and provided misleading information in discovery. For example, Hubbartt repeatedly denied taking any computer programs from Backus Electric, and stated under oath at a deposition that the personal computer he had while employed at Backus Electric was stolen. However, his personal computer was later discovered and analyzed by Backus's forensic computer expert, who testified that he found close to 100 files transferred from Backus Electric. Most of these were transferred shortly before Hubbartt left Backus. Additionally, Backus's computer expert testified that years into the litigation and after Hubbartt denied taking Backus's computer files, Hubbartt searched his computer using the term "Backus", deleted

all of the Backus-related folders, and ran file-wiping software to erase any remnants.

¶29 Next, we reject Hubbartt's argument that the punitive damages award of $1,000,000 was excessive. The award of punitive damages in a particular case is within the discretion of the jury and "we are reluctant to set aside an award merely because it was large or we would have awarded less." *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 626, 563 N.W.2d 154 (Ct. App. 1997). An award is excessive, and therefore violates due process, if it is more than necessary to serve the purpose of punitive damages, or inflicts a penalty or burden on the defendant that is disproportionate to the wrongdoing. *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 193, 577 N.W.2d 67, 81 (Ct. App. 1996). Punitive damages are meant to punish the wrongdoer, and to deter the wrongdoer and others from similar conduct, rather than to compensate the plaintiff for any loss. *Trinity Evangelical Lutheran Church and Sch. – Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶50, 261 Wis. 2d 333, 611 N.W.2d 789. In reviewing claims of excessive punitives, the evidence must be viewed in light most favorable to the plaintiff, and a jury's punitive damages award will not be disturbed, unless the verdict is so clearly excessive as to indicate passion and prejudice. *Id.* at ¶56.

¶30 Wisconsin courts use a six-factor test to evaluate whether punitive damages are excessive such that they violate due process. *Kimble v. Land Concepts, Inc.*, 2014 WI 21, ¶¶46-47, 353 Wis. 2d 377, 845 N.W.2d 395. Those factors are as follows:

1. The grievousness of the acts;

2. The degree of malicious intent;

11

3. Whether the award bears a reasonable relationship to the award of compensatory damages;

4. The potential damage that might have been caused by the acts;

5. The ratio of the award to civil or criminal penalties that could be imposed for comparable misconduct; and

6. The wealth of the wrongdoer.

*Id*.

¶31    Hubbartt acknowledges that the punitive damages award was within the caps provided by WIS. STAT. § 895.043(6), but argues that it was unreasonable "because there was no testimony providing a causal nexus between Hubbartt's actions and the amount of compensatory damages awarded" and because the award "is the product of [the alleged] errors argued above." Indeed, Hubbartt's analysis of all six factors relies on arguments that we have addressed and rejected, or that are legally undeveloped and unsupported. Viewing the verdict in the light most favorable to Backus, we cannot say that the award was so clearly excessive as to indicate impermissible passion or prejudice.

*Hubbartt is not entitled to a new trial in the interest of justice because the real controversy was fully and fairly tried.*

¶32    Finally, Hubbartt seeks a new trial under WIS. STAT. § 752.35 on the grounds that the real controversy was not fully tried. To succeed, he must demonstrate "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." *State v. Darcy N.K.*, 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (quoting *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996)). An appellate court will exercise its discretion

to grant a new trial in the interest of justice "only in exceptional cases." *State v. Cuyler*, 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).

¶33 Hubbartt argues that the accumulation of errors in this case entitles him to a new trial. To the claims we have already addressed, Hubbartt adds that the circuit court *sua sponte* restricted witness testimony and disciplined Hubbartt's witnesses, or otherwise improperly curtailed his case. Again, we are not persuaded.

¶34 First, Hubbartt points out that Backus's case spanned four of five trial days, and suggests that Hubbartt's counsel was strong-armed into entering stipulations in lieu of presenting live witnesses. This is contradicted by the record, which demonstrates that the streamlining or stipulations of witnesses was accomplished with the consent of Hubbartt's counsel.

¶35 Second, Hubbartt complains that the circuit court prevented him from introducing the testimony of a former Backus Electric customer, and improperly restricted the testimony of defense witnesses Barbara Bader and Nicholas Reimann. With regard to the former Backus customer who was allegedly overbilled, there was no evidence that the customer even knew of the claimed overbilling. As such, this testimony was not relevant to explain why the customer left Backus for Hubbartt.

¶36 As for the alleged restrictions on Hubbartt's witnesses, the circuit court thoroughly explained each of its evidentiary rulings. In terms of admonishments, the court gave ample warning before admonishing two defense witnesses in front of the jury. Despite the court's warnings, Bader and Reimann repeatedly refused to follow the court's instructions. Hubbartt develops no coherent legal theory as to how this constitutes an erroneous exercise of discretion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.