*Edward Mekhaya v. Eastland Food Corporation, et al.*, No. 266, September Term, 2022.
Opinion by Harrell, J.

**CORPORATIONS AND BUSINESS ORGANIZATIONS – CAPITAL AND STOCK – DIVIDENDS AND DIVISION OF PROFITS – WHAT IS A DIVIDEND**

**CORPORATIONS AND BUSINESS ORGANIZATIONS – DERIVATIVE ACTIONS; SUING OR DEFENDING ON BEHALF OF CORPORATION – DERIVATIVE ACTIONS BY SHAREHOLDERS AGAINST DIRECTORS, OFFICERS, OR AGENTS – PERSONS ENTITLED TO SUE OR DEFEND; STANDING – DERIVATIVE OR DIRECT ACTION**

The Circuit Court for Howard County erred in dismissing, with prejudice, Appellant's initial complaint advancing claims for shareholder oppression, breach of fiduciary duty, and unjust enrichment, against his former employer ("Eastland") and its board of directors. In his claim for shareholder oppression, Appellant alleged that, as a minority shareholder in Eastland, he received, before his firing as an employee and removal from the board, and expected to continue to share (as a shareholder) in Eastland's profits by receiving a "de facto" dividend, which Eastland had been paying as part of Appellant's salary prior to terminating his employment. He asserted that such expectation was reasonable, despite the fact that Eastland, a closely-held corporation, never declared officially a dividend. Appellant alleged that, by depriving him of the *de facto* dividend portion of his salary upon terminating his employment, Eastland and its board of directors defeated substantially his reasonable expectation as a shareholder. Those allegations were sufficient to state a claim for shareholder oppression, and the court erred in finding otherwise. Moreover, because the purported deprivation of Appellant's *de facto* dividend could constitute a breach of a fiduciary duty owed directly to Appellant, if proven, and resulted in a direct harm that was separate from any harm suffered by Eastland, Appellant's claims for breach of fiduciary duty and unjust enrichment were direct, and not derivative. The court erred in dismissing those claims as derivative. The court erred also in relying on the "business judgment rule," which is inapplicable to direct claims.

Circuit Court for Howard County
Case No. C-13-CV-21-000666

IN THE APPELLATE COURT*

OF MARYLAND

No. 266

September Term, 2022

_____

EDWARD MEKHAYA

v.

EASTLAND FOOD CORPORATION, ET AL.

_____

Berger,
Albright,
Harrell, Glenn T., Jr.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed:  December 22, 2022

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

"Close don't count in baseball. Close only counts in horseshoes and hand grenades."

Frank Robinson, TIME Magazine, 31 July 1973.

To understand how this phrase might be useful in appreciating the outcome of this case, one should recall how scoring occurs in the game of horseshoes. The rules of horseshoes provide that: (1) three points are awarded if a horseshoe lands encircling the stake (commonly called a "ringer"); (2) one point is scored for a shoe that, although not a ringer, touches or leans against the stake (commonly called a "leaner"); and (3) one point is scored for a shoe that lands within six inches of the stake. Thus, getting close to an objective may prove important to staying in the game.

Edward Mekhaya, Appellant, filed in the Circuit Court for Howard County a civil complaint against Eastland Food Corporation ("Eastland") and several of its directors ("Appellees") alleging counts of shareholder oppression, breach of fiduciary duties, and unjust enrichment. Appellees responded with a motion to dismiss. The court dismissed Mekhaya's complaint, with prejudice. Mekhaya filed a motion to alter or amend that judgment, which the court denied.

In this timely appeal, Mekhaya presents six questions. For clarity, we have rephrased and consolidated them to:

1. Did the circuit court err in dismissing his complaint with prejudice and without leave to amend?

2. Did the circuit court err in denying his motion to alter or amend the court's judgment?

For reasons to be explained, we hold that the circuit court erred in dismissing Mekhaya's complaint. Accordingly, we reverse and remand for further proceedings consistent with this opinion. We do not need to address the second question.

## BACKGROUND

Eastland is a Maryland corporation that imports and distributes food and other products from international and domestic suppliers. In 2000, Mekhaya was hired by Eastland. Eventually, he rose to become Eastland's Vice President of Operations. In December 2008, Mekhaya received an ownership interest in Eastland in the form of 28% of its stock. The remaining shares were owned by Mekhaya's brother, Oscar Mekhaya ("Oscar"), who owns also 28% of the shares; Mekhaya's mother, Vipa Mekhaya ("Vipa"), who owns 35% of the shares; and, Oscar's children, who own the remaining 9%. Until October 2018, Mekhaya was one of four members of Eastland's board of directors. The remaining members were Oscar, Vipa, and a third individual, Tisnai Thaitham ("Thaitham").

Eastland was led and managed formerly by Mekhaya's father, Pricha Mekhayarajjananonth ("Pricha"). In September 2017, Pricha was removed as President and a director, and, over Mekhaya's objection, Oscar was elected President of Eastland. In October 2018, Mekhaya was not re-elected to Eastland's board of directors. A few days later, his employment with Eastland was terminated. At the time of his termination, Mekhaya's annual compensation totaled approximately $400,000.00.

2

### *The Complaint*

In 2021, Mekhaya initiated the present lawsuit against Eastland, Oscar, Vipa, and Thaitham. In his complaint, he alleged that, during the years that he was employed by Eastland, he "initiated and led many efforts to establish or improve business processes and procedures" and that he "selected and implemented software and technology in support of such efforts." Despite those efforts, Mekhaya claimed, Appellees engaged in a scheme to "take control" of Eastland and "oust" Mekhaya.

According to Mekhaya, that scheme commenced in September 2017, with the removal of Pricha as director and the election of Oscar as president of Eastland. Mekhaya objected to those decisions, in part, because Oscar "lacked management experience[,]" "was not good with employees[,]" and "would get upset and very emotional when employees would tell him what he does not want to hear, resulting in high employee turnover rate." In August 2018, a majority of Eastland's board of directors agreed to increase Eastland's credit line, an action that Mekhaya objected to because "Eastland's management was growing inventory at an alarming rate." Eastland held a stockholder meeting in October 2018, during which it was suggested "that the meeting agenda include a proposed 'dividend study' to consider 'advantages of moving to shareholders getting dividends with respect to ownership in lieu of their salaries being paid as if they were dividends.'" Mekhaya alleged that, after he was removed from the board of directors and his employment was terminated, Eastland's remaining board of directors chose not to consider further that study.

Mekhaya alleged further that, although the company was "quite profitable" in the years following his departure from the company,[1] "Eastland has not and will not agree to declare and pay a dividend to its stockholders." Mekhaya asserted that Eastland had chosen instead to pay "excessively high salary and other compensation" to Oscar and Vipa, which resulted in "reduced profits for … Eastland." Mekhaya asserted also that Oscar and Vipa had "diverted funds of … Eastland" for their "personal use and gain."

Mekhaya pleaded three causes of action. The first named all four defendants and was titled "Count I – Oppression of Minority Stockholder." The second cause of action named Oscar, Vipa, and Thaitham as defendants and was titled "Count II – Breach of Fiduciary Duties." The third called-out Oscar and Vipa and was titled "Count III – Unjust Enrichment."

In his claim for oppression of a minority stockholder, Mekhaya alleged that Appellees' "illegal, fraudulent and oppressive conduct substantially defeat[ed] the reasonable expectations held by Plaintiff as a minority stockholder" and were "acts to 'squeeze out' Plaintiff." He asserted that he "had a reasonable expectation that, after becoming a stockholder in … Eastland, he would not be summarily removed from employment and management of … Eastland." Mekhaya claimed those "reasonable expectations were central to [his] decision to spearhead the growth and development of [Eastland's] business operations." Mekhaya maintained also that "Eastland has not and

---

[1] Eastland's revenue "increased to about $116M for the period ending March 31, 2021" and that "[n]et income substantially increased to about $2M for the period ending March 31, 2021."

4

will not agree to pay a dividend to its stockholders" despite being "quite profitable[.]" He contended that Eastland was "paying excessively high salary and other compensation" to Oscar and Vipa, "resulting in reduced profits for … Eastland[,]" and that Oscar and Vipa had "diverted funds" for their "personal use and gain." By terminating his employment, removing him from the board of directors, refusing to pay dividends, paying excessively high salaries, and diverting Eastland's funds, the defendants had "frustrated the reasonable expectations of Plaintiff, thereby engaging in oppressive conduct." He sought from the court the following relief under this count: appoint a receiver to continue operation of the company for the benefit of the stockholders until the oppressive conduct ceased; retain jurisdiction of the case for the protection of the minority stockholders; issue an injunction to prohibit continuing acts of oppression; and award compensatory damages.

As for the breach of fiduciary duties count, Mekhaya claimed that Oscar, Vipa, and Thaitham owed him a fiduciary duty to act in good faith and in a manner consistent with his and Eastland's best interests. He asserted that the three defendants breached that duty by authorizing Eastland to pay excessive salaries to Oscar and Vipa and by diverting Eastland's funds for their personal use and gain. Mekhaya claimed that the defendants' actions had resulted in reduced profits and other damages. He asked the court to award compensatory damages.

In his claim for unjust enrichment, Mekhaya claimed that Oscar and Vipa were enriched unjustly, at his expense, when they received excessive salaries and when they diverted company funds for their personal use and gain. Mekhaya alleged that it would be inequitable to allow Oscar and Vipa to retain those benefits, which they received through

their "wrongful course of conduct and actions[.]" He asked the court to award compensatory damages.

### *The Motion to Dismiss*

Eastland, Oscar, Vipa, and Thaitham filed a joint motion to dismiss, claiming that Mekhaya failed to state any claims for which relief could be granted. They argued that Mekhaya failed to state a claim for minority oppression because he did not establish any "oppressive" conduct by Appellees and because he failed to rebut the general presumption that business decisions by a board of directors are reasonable and made in good faith (the "business judgment rule"). Appellees asserted that their decision to remove Mekhaya as an employee and member of the board, and their decision not to declare dividends, could not be "oppressive" because Mekhaya did not establish the existence of any shareholder or employment agreement conferring those rights to him. As to Mekhaya's claims for breach of fiduciary duty and unjust enrichment, Appellees argued that those claims failed because Mekhaya did not show that he suffered a harm that was separate and distinct from any harm suffered by Eastland.

At the hearing on the motion to dismiss, Mekhaya's counsel responded to the arguments raised by the motion to dismiss. Regarding his client's "reasonable expectations" as an employee and a shareholder, counsel asserted that the complaint made clear that "the parties were being paid salaries as though they were dividends[,]" in large measure. Counsel insisted that there was "an understanding amongst the parties" that Eastland would not declare a dividend, but would instead "pay the dividends out via the salary[.]" Counsel maintained that, when Mekhaya was terminated as an employee and

6

stopped receiving a salary, he was, in essence, deprived of a dividend that he should have received as a shareholder. Counsel claimed that the deprivation of that "dividend" vis-à-vis the loss of his salary supported also the claims for breach of fiduciary duty and unjust enrichment, as that deprivation was a harm separate and distinct from any harm suffered by Eastland.

At the conclusion of the hearing, Mekhaya's counsel sought, in the alternative that, if the circuit court believed that the complaint was somehow deficient, it should grant leave to amend because "there are and could be additional facts that … could be alleged[.]" The court asked counsel to elaborate. Counsel responded that Mekhaya's salary increased significantly in 2008, when he became a shareholder, and that his salary remained high until 2018, when he was terminated. Counsel maintained further that a reasonable inference could be drawn that the increase in Mekhaya's salary was the result of an undeclared dividend. As to the other claims, counsel stated that he could "add additional facts" to show how Mekhaya was injured personally.

The circuit court granted Appellees' motion to dismiss, finding as follows:

> In terms of Count One, the oppression count, … I think [Mekhaya's] pleadings … fail to show or plead how [his] expectations were substantially defeated. The concept of this salary as dividends – or dividends as salary, excuse me, is a new concept today. There is no – there seems to be no confirmed basis that it was ever reviewed as a dividends or that the salary was viewed as dividends in this matter. And I think that when you look at [the case law], it is necessary to look at … the overall relationship, [and] there's no expectations set up that there would be dividends and that these would be continued to be paid. There was an employee of the company who had been terminated and so on. And so, I think in the general nature of the pleadings, they're not sufficient at this time.

7

In terms of Counts Two and Three, this was not brought as a derivative suit. … I think the – again, [Mekhaya's] assertion that dividends would have been paid is a misnomer here. That he was receiving a salary before. He was fired as an at-will employee and so was no longer receiving a salary. And in the pleading, itself, it indicates that – really makes assertions that part of that harm was to the corporation, and I've heard nothing today that the harm was distinct from that of the corporation. … And again, there is a presumption, based on [the business judgment rule], that the Defendants in their capacities acted … in the best interest of the company and that they acted accordingly. And based on what is in the pleadings, they are not sufficient. And I have heard nothing today, even with what [Mekhaya] through Counsel has added that would or could be had with amendment.

And for those reasons I am going to dismiss all three counts and that is with prejudice. That's the ruling of the court.

### The Motion to Alter or Amend

Ten days after judgment was entered, Mekhaya filed a motion to alter or amend the judgment. He attached to that motion an amended complaint, which he claimed cured any defect in his initial complaint. In the amended complaint, Mekhaya claimed that, in 1999, he had a conversation with his father, Pricha, during which Pricha asked Mekhaya to join Eastland "to help with problems" at the company. According to Mekhaya, Pricha told him that he would become an employee of Eastland, participate in the management of Eastland, and become eventually an owner and be paid as an owner. Pricha told Mekhaya that the compensation structure of the owners included the "sharing of profits" and that each owner would receive "a percentage of profits paid as a bonus after the end of each fiscal year instead of declared dividends." Mekhaya alleged that he joined Eastland based on that conversation and with the expectation of "continuous employment, participation in the management of … Eastland, and receipt of the profits of … Eastland as an eventual owner[.]" Mekhaya included a table outlining his yearly salary from 2006 to 2018, which

8

he claimed show, based on the increases in his yearly income, how he had shared in the profits of Eastland as a shareholder. Additional facts were claimed showing that "Eastland's stockholders' long-standing practice of … paying the profits of … Eastland as a bonus to its stockholders instead of as a declared dividend" prevailed. He insisted that, as a shareholder, he had a right to receive those "dividends," regardless of his employment status.

The circuit court denied Mekhaya's motion to alter or amend. This timely appeal followed.

## DISCUSSION

## I.

Mekhaya argues that the circuit court erred in dismissing his complaint, with prejudice. He asserts that he pled adequately claims for stockholder oppression, breach of fiduciary duty, and unjust enrichment.[2] He asserts that his claim for stockholder oppression should not have been dismissed because he alleged facts showing that Appellees' "oppressive conduct" infringed upon his "reasonable expectations" as a shareholder by excluding him from Eastland's profits, by removing him from Eastland's management and board of directors, and by diverting profits of Eastland from him to Oscar and Vipa in the

---

[2] In the "Statement of Facts" section of his brief, Mekhaya relied almost exclusively on the facts as set forth in his amended complaint. For the purposes of reviewing the circuit court's dismissal of Mekhaya's original complaint, we are concerned only with the facts as alleged in the original complaint and reasonable inferences that could be drawn from those allegations. *See Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 475 (2004).

form of high salaries.[3]  He argues also that, even if his initial complaint was somehow deficient, the court should have granted him leave to amend the complaint.

Unsurprisingly, Appellees retort that the circuit court did not err in dismissing Mekhaya's complaint, with prejudice.  Appellees contend that he failed to state a claim for shareholder oppression because he did not demonstrate arguably that he was entitled to any benefit as a shareholder, nor did he establish that his expectations as a shareholder were reasonable objectively.  Appellees contend that Mekhaya failed to state a claim for breach of fiduciary duty and unjust enrichment because he did not allege adequately that he suffered a harm distinct from any harm suffered by Eastland.  Appellees continue that Mekhaya failed to advance a prima facie rebuttal of the application of the business judgment rule.  Finally, Appellees claim that the court did not err in denying Mekhaya leave to amend because he failed to identify any additional facts that would have cured the aforementioned deficiencies.

### Standard of Review

"When reviewing the grant of a motion to dismiss, the appropriate standard of review is whether the trial court was legally correct."  *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019) (quotation marks and citations omitted).  In making that determination, we "assume the truth of factual allegations made in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff."  *Ceccone v.*

---

[3] Mekhaya argues also that the circuit court erred in finding that the lack of a written shareholder agreement precluded his recovery for shareholder oppression.  We need not address that claim, as it appears from our review of the court's oral ruling that it made no such finding.

10

*Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017). "We also interpret Maryland case law to review whether the [trial] courts' conclusions were correct as a matter of law." *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 139 (2012).

"Under Maryland Rule 2-322(b)(2), a defendant may seek dismissal of a complaint if the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Cain v. Midland Funding, LLC*, 475 Md. 4, 33 (2021). "In determining whether a plaintiff has alleged claims upon which relief can be granted, there is a big difference between that which is necessary to prove the elements and that which is necessary to merely allege them." *Aleti v. Metro. Baltimore, LLC*, 479 Md. 696, 717 (2022). "A motion to dismiss may only be granted where the allegations presented do not state a cause of action." *Cain*, 475 Md. at 33-34. "Indeed, our decision does not pass on the merits of the claim, but instead, we merely determine[] the plaintiff's right to bring the action." *Aleti*, 479 Md. at 717-18 (quotation marks and citation omitted).

"If the court orders dismissal, an amended complaint may be filed only if the court expressly grants leave to amend." Md. Rule 2-322(c). "'The determination to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge.'" *A.C. v. Maryland Comm'n on C.R.*, 232 Md. App. 558, 579 (2017) (quoting *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443-44 (2002)). "[I]t is well-established that leave to amend complaints should be granted freely to serve the ends of justice[.]" *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 673 (2010). Nevertheless, "an amendment should not be allowed if it would result in prejudice to the

11

opposing party or undue delay, such as where amendment would be futile because the claim is flawed irreparably." *Id.* at 673-74.

### *The Shareholder Oppression Count*

Section 3-413 of the Corporations and Associations ("CA") Article of the Maryland Code states, in pertinent part, that certain shareholders may petition a court to dissolve a corporation on the grounds that "[t]he acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." CA § 3-413(b)(2). An "oppressive act" is "a term commonly used to describe adverse treatment of minority shareholders in a closely-held corporation by those who wield power within the company." *Bontempo v. Lare*, 444 Md. 344, 365 (2015). The term has been defined also as "conduct that substantially defeats the reasonable expectations of a stockholder." *Edenbaum v. Schwarcz-Osztreicherne*, 165 Md. App. 233, 256 (2005) (quotation marks and citation omitted). The "reasonable expectations" doctrine is favored when dealing with closely-held corporations. *Id.* at 256-57.

Typically, a closely-held corporation has a small number of stockholders, no active market for the trade of such stock, and substantial majority stockholder participation in the direction and management of the company. *Id.* at 257. "Furthermore, it is generally understood that, in addition to supplying capital and labor to a contemplated enterprise and expecting a fair return, parties comprising the ownership of a [closely-held] corporation expect to be actively involved in its management and operation." *Id.* (quotation marks and citation omitted). A shareholder in a closely-held corporation considers generally himself or herself "as a co-owner of the business and wants the privileges and powers that go with

12

ownership." *Id.* (quotation marks and citation omitted). Such privileges may include employment, a share of corporate earnings, and a role in the management of the company. *Id.* at 258.

"But the very nature of a closely held corporation makes it possible for a majority shareholder to 'freeze out' a minority shareholder, that is, deprive a minority shareholder of her interest in the business or a fair return on her [or his] investment." *Id.* at 257-58 (quotation marks and citation omitted). Because the market for stock in a closely-held corporation is limited, a minority shareholder will have likely few, if any, recourses when faced with oppressive tactics by a majority shareholder. *Id.* at 258. As such, "courts have looked at a majority shareholder's alleged oppressive conduct[] in terms of the reasonable expectations held by minority shareholders in committing their capital to the particular enterprise." *Id.* at 258 (quotation marks and citation omitted). A majority is said to have engaged in oppressive tactics when it "seeks to defeat those expectations and there exists no effective means of salvaging the investment." *Id.* (quotation marks and citation omitted).

That said, "oppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the [shareholder's] decision to join the venture." *Id.* (quotation marks and citation omitted). That is, the majority shareholders' conduct "should not be deemed oppressive simply because the [minority shareholder's] subjective hopes and desires in joining the venture are not fulfilled." *Id.* (quotation marks and citation omitted).

If the majority shareholder's conduct is found to be oppressive, the court may order dissolution; however, that is not the only remedy. *Bontempo*, 444 Md. at 370. A court may order various equitable remedies in lieu of dissolution. *Edenbaum*, 165 Md. App. at 260-61. Those equitable remedies include, but are not limited to: entering an order requiring dissolution at a future date if the stockholders fail to resolve their differences prior to that date; appointing a receiver to continue the operation of the company until the differences are resolved; appointing a special fiscal agent to report to the court regarding the company's operation; retaining jurisdiction of the case; ordering an accounting of company funds; issuing an injunction to prohibit certain conduct; and, entering an order requiring the corporation to purchase the minority shareholder's stock or sell additional stock to the minority shareholder. *Id.* A court may order "affirmative relief by the required declaration of a dividend or a reduction and distribution of capital[,]" or the court may award "damages to minority stockholders as compensation for any injury suffered by them as the result of 'oppressive' conduct by the majority in control of the corporation." *Id.* at 261.

Here, the corporation at issue – Eastland – was, for all intents and purposes, a closely-held corporation. Mekhaya owned 28% of the shares, his brother, Oscar, owned 28% of the shares, and his mother, Vipa, owned 35% of the shares, with the remaining 9% vested in Oscar's children. Prior to 2018, the three main shareholders, along with Thaitham, composed the entire board of directors and controlled the operation of the company. In 2018, Mekhaya was fired as an employee and removed from the board, but

retained his 28% interest. From that point forward, Oscar, Vipa, and Thaitham were the only board members.

To allege properly a cause of action for shareholder oppression, Mekhaya was obligated to allege that Eastland's majority shareholders, namely, Oscar and Vipa, engaged in conduct that defeated substantially his objectively reasonable expectations as a minority shareholder. In addition, the relief requested by Mekhaya needed to come within the circuit court's equitable powers. As explained below, we are convinced that he met those threshold requirements in his complaint.

Mekhaya's primary claim was that, as a shareholder, he expected to share in company profits via "de facto" dividends, which he had been receiving as part of his salary prior to being fired and removed from Eastland's board of directors. While conceding that Eastland and its board of directors never declared expressly that a dividend was to be paid, Mekhaya claimed that the shareholders understood that a portion of the company's profits would be distributed to them as part of their yearly salaries. He asserted that, by firing him and refusing to pay the *de facto* dividend following the termination of his employment, the majority shareholders engaged in conduct that defeated his expectations as a shareholder. Mekhaya claimed that the majority shareholders continued that oppressive conduct by providing excessive salaries and other benefits to themselves from company profits, without conferring a similar benefit upon him. He asked the circuit court to award him various forms of relief, including appointing a receiver to continue operation of the company for the benefit of the stockholders until the oppressive conduct ceased, retaining

jurisdiction of the case for his protection, issuing an injunction to prohibit continuing acts of oppression, and awarding compensatory damages.

The circuit court, in dismissing Mekhaya's oppression claim, found that there was "no confirmed basis that [the claimed dividend] was ever reviewed as a dividend[] or that the salary was viewed as dividend[] in this matter." The court found also that there were "no expectations set up that there would be dividends and that these would be continued to be paid."

The question we ask ourselves, therefore, is whether the *de facto* dividend claimed by Mekhaya, or the majority shareholders' refusal to expressly declare a dividend, could be an objectively reasonable expectation by him, according to the circumstances set out in the complaint. If so, we ask then whether the majority shareholders' actions defeated substantially that expectation and whether Mekhaya's requested relief was within the circuit court's powers to grant.

There is a dearth of Maryland law that touches on the *de facto* dividend claim. Nevertheless, there is persuasive authority from other jurisdictions in support of Mekhaya's assertions. We reiterate that the sole issue before this Court is whether Mekhaya's complaint established a cause of action. We are not concerned yet with whether his allegations can be proven.

The Maryland statutes governing dividends do not recognize expressly a "de facto" dividend. In reading those statutes, however, we cannot discern that the statutes foreclose such a dividend. CA § 2-309(b) states that, "[i]f authorized by its board of directors, a corporation may make distributions to its stockholders, subject to any restriction in its

16

charter and the limitations in § 2-311 of this subtitle." CA § 2-311 precludes distributions under circumstances not relevant here. CA § 2-301(a)(1)(i) defines "distribution," in pertinent part, as "[a] direct or indirect transfer of money or other property of the corporation in respect of any of its shares[.]" The statute states further that "[a] distribution may be in the form of … [a] declaration or payment of a dividend[.]" CA § 2-301(b)(1). Nothing in that language indicates that a company would be precluded from paying a dividend in the manner alleged by Mekhaya, *i.e.*, by including it as part of a shareholder's salary as a corporate employee or director. Again, whether such a dividend was declared *actually* and paid is not as yet at issue here.

Outside of Maryland, the concept of a "constructive" or "disguised" dividend being paid as part of a shareholder's salary, and without being declared expressly, is well-recognized. For instance, the Internal Revenue Service ("IRS") permits generally a tax deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" 26 U.S.C. § 162(a). According to the Code of Federal Regulations, that deduction may apply to "salaries or other compensation for personal services actually rendered." 26 C.F.R. § 1.162-7(a). The test of deductibility is whether the salaries or other compensation "are reasonable and are in fact payments purely for services." *Id.* As such, companies are incentivized to characterize any payment to a shareholder as salary so that the payment may qualify for a tax deduction. That incentive can lead corporations, particularly closely-held corporations, to "disguise" a dividend payment as salary:

17

Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock.

26 C.F.R. § 1.162-7(b)(1).

The federal regulations go on to state that a shareholder's salary may be treated as a dividend by the IRS, and thus not tax deductible by the company, depending on the circumstances and regardless of how it is characterized by the company:

The income tax liability of the recipient in respect of an amount ostensibly paid to him as compensation, but not allowed to be deducted as such by the payor, will depend upon the circumstances of each case. Thus, in the case of excessive payments by corporations, if such payments correspond or bear a close relationship to stockholdings, and are found to be a distribution of earnings or profits, the excessive payments will be treated as a dividend.

26 C.F.R. § 1.162-8.

Various courts have looked similarly to the circumstances of the payment, and not necessarily its characterization by the company, in determining whether a "salary" paid to a shareholder was instead a disguised dividend. In *In re White*, 429 B.R. 201 (2010), the United States Bankruptcy Court in the Southern District of Texas concluded that year-end "bonuses," which the company had paid to shareholders to avoid tax liabilities, were actually dividends, even though the company never declared a dividend. *Id.* at 207-10. In reaching that conclusion, the court noted that the bonuses were paid in accordance with each shareholders' proportionate share of ownership and that the amount of the bonuses

18

was determined based on the company's earnings. *Id.* at 209. The court quoted, with favor, the following language from an opinion of the United States Court of Appeals for the Fifth Circuit regarding how to recognize a disguised dividend:

> "Substantial bonuses declared at the end of the year when the earnings of a business are known usually indicate the existence of disguised dividends. Moreover, this Court has previously determined that, especially in the context of closely held corporations, it is in the tax interest of all parties to characterize the amounts distributed to shareholders/officers as compensation rather than dividends. Because the [d]istribution of profits through compensation payments to shareholder/officers avoids the double tax on corporate profits which are distributed to shareholders as dividends, the concern arises where corporations distribute their profits through the payment of unreasonably large salaries and bonuses to those controlling shareholder/officers. Therefore, it is necessary to carefully scrutinize the payments to ensure that they are not disguised dividends."

*Id.* at 209-10 (quoting *Brewer Quality Homes, Inc. v. C.I.R.*, 122 Fed. Appx. 88, 94-95 (5th Cir. 2004)) (internal quotation marks omitted).

In *Haffner's Service Stations, Inc. v. C.I.R.*, 326 F.3d 1 (1st Cir. 2003), the United States Court of Appeals for the First Circuit engaged in a similar analysis in evaluating whether "bonuses" paid by a company to its shareholders constituted salary for tax purposes. *Id.* at 1-2. There, the company claimed the bonuses as a deduction, but the IRS disallowed the deduction. *Id.* The company appealed. The First Circuit reviewed the nature of the bonuses to determine whether they should be considered "salary" or "dividends" for tax purposes. *Id.* at 3-8. The Court engaged in that analysis even though the company had "never paid a dividend." *Id.* at 2.

Outside of the tax context, but within the realm of individual claims by minority shareholders against majority shareholders, courts have applied a similar analysis to

19

determine whether the minority shareholder should be entitled to a dividend despite the fact that the company never declared officially a dividend. In *Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270 (Alaska 1980), the Supreme Court of Alaska considered various remedies available to a shareholder who had been the victim of shareholder oppression and who claimed that the majority shareholders had "enjoyed benefits from the corporation which should have been shared equally with her." *Id.* at 277. In analyzing the merits of that claim, the Court noted that certain evidence had been adduced showing that, while the majority shareholders had not received dividends per se, they had received certain "director's fees." *Id.* The Court explained that, "[r]egardless of how the corporation labels these expenditures, if they were not made for the reasonable value of services rendered to the corporation, some portion of these payments might be characterized as constructive dividends." *Id.* The Court reasoned that "[s]uch transactions should be examined to determine whether they are in fact a distribution of dividends, and if so the excluded shareholder must participate equally in the payments received by other shareholders." *Id.*

In *Yates v. Holt-Smith*, 768 N.W.2d 213 (Wis. Ct. App. 2009), the Court of Appeals of Wisconsin considered the merits of a breach of fiduciary duty claim filed by a shareholder against the president of a company, who was also a shareholder. *Id.* at 217-18. The claim was based, in part, on a year-end, lump sum payment that had been given to the president but not the aggrieved shareholder. *Id.* The shareholder claimed that the payment should have been categorized as a "constructive dividend," while the president claimed that the payment was "in fact a bonus because [the company's] board of directors did not declare a dividend [that year], or ever, for that matter." *Id.* at 218. The Court

20

agreed with the shareholder, noting that "[t]he fact that a distribution is not called a 'dividend' by a corporation's board of directors is not dispositive as to whether the distribution is a dividend within the meaning of the law." *Id.* The Court, after considering the circumstances surrounding the payment, concluded that the payment was a constructive dividend that should have been paid also to the suing shareholder. *Id.*

The United States Bankruptcy Court engaged in a similar analysis in *In re Toy King Distribs., Inc.*, 256 B.R. 1 (Bankr. M.D. Fla. 2000), a case in which a company made dividend payments to certain shareholders, which violated a confirmed bankruptcy plan. *Id.* at 163. The Court found that the payments violated the plan even though the company categorized the payments as "guaranty fee payments." *Id.* In reaching that view, the Court noted that "[w]hether a payment constitutes a dividend is a question of fact to be determined by the Court and no one factor is determinative." *Id.* (quotation marks and citations omitted). The Court noted further that "[i]t has been universally recognized that the mere fact that the distributions are not called dividends by the board of directors of the corporation does not detract from such distributions being dividends within the meaning of the law." *Id.* (quotation marks and citation omitted).

In *Erdman v. Yolles*, 233 N.W.2d 667 (Mich. Ct. App. 1975), a case somewhat similar to the present one, the Court of Appeals of Michigan considered a claim filed by a minority shareholder, who retained a 25% interest in a company after the company terminated his employment. *Id.* at 668. The minority shareholder filed suit against the three remaining shareholders, each of whom owned 25% of the company, after they granted themselves pay increases and bonuses following the termination of the minority

21

shareholder's employment.  *Id.*  Those payments, which were not paid to the minority shareholder, were paid out of company profits.  *Id.*  The trial court ruled in favor of the minority shareholder and found that he was entitled to his share of the profits, despite the fact that "[n]o dividends were specifically declared or other distributions to the shareholders effected except through the medium of salaries."  *Id.*  The remaining shareholders appealed to the Court of Appeals of Michigan, which affirmed.  *Id.* at 669-70.  In so doing, the Court noted that "[t]he entire course of conduct between these parties supports the trial judge's finding that profits of the corporation were distributed through salary increases and that, in this case, plaintiff was improperly denied his 1/4 share."  *Id.* at 669.  The Court explained that "[t]he distribution of profits in this manner … constituted a dividend, whether denominated such or not."  *Id.*

With respect to the remedies available to a minority shareholder who claims oppression, some courts have made clear that the minority shareholder's "reasonable expectations" should be construed liberally, particularly where the failure of the claim would render the shares worthless.  In *Manere v. Collins*, 241 A.3d 133 (Conn. App. Ct. 2020), the Appellate Court of Connecticut reversed a trial court's verdict denying a minority shareholder's oppression claim, which he filed after being fired for misconduct and was based, in part, on the termination of his employment.  *Id.* at 161-62.  Although the Court agreed that the shareholder could not establish oppression based on the termination of his employment (because it was unreasonable for the shareholder to expect to maintain his employment following the misconduct), the Court held that the trial court had erred in failing to assess the shareholder's other reasonable expectations beyond employment.  *Id.*

In remanding the case so that the trial court could assess the shareholder's other reasonable expectations, the Court cautioned that, even though the shareholder was guilty of misconduct, he nevertheless could not "be marginalized to the extent that he would be precluded from realizing what reasonable expectation he still maintains as a minority member." *Id.* at 161. The Court explained that, "so long as the [shareholder] retains an investment in [the company], his reasonable expectations include being entitled to certain minimum rights[.]" *Id.* at 162-63. The Court reasoned that "[a]n infringement of these rights and a bar to any remedy [would] leave[] the plaintiff with a worthless asset." *Id*. at 163.

The Superior Court of Pennsylvania reached a similar conclusion in *Ford v. Ford*, 878 A.2d 894 (Pa. Super. Ct. 2005). There, the Court upheld a lower court's finding of shareholder oppression, where the trial court found that the majority had "presumptively defeated the minority's reasonable expectations" by "grant[ing] no benefits whatsoever to the minority shareholders[.]" *Id.* at 903-04. The Court explained that "[m]inority shareholders have a reasonable expectation to derive some benefit from their ownership interest in a corporation, particularly when a corporation is profitable." *Id.* at 904. The Court explained further that "[w]hen minority shareholders receive no benefit from their interest in a corporation, while the majority shareholder benefits substantially, the conduct of the majority shareholder may be found to be inherently oppressive." *Id.* The Court concluded that, although certain expectations by a minority shareholder may be unreasonable based on the circumstances, the shareholder nevertheless has "a reasonable

23

expectation to receive *some* benefit from their minority shares[.]" *Id.* (emphasis in original).

In *Bonavita v. Corbo*, 692 A.2d 119 (N.J. Super. Ct. Ch. Div. 1996), the Superior Court of New Jersey held that a majority shareholder engaged in shareholder oppression where the majority shareholder's operation of the company resulted in substantial benefits for the majority shareholder, but no discernible benefit for the minority shareholder. *Id.* at 124-27. In reaching that holding, the Court concluded that the company's refusal to pay a dividend constituted shareholder oppression. *Id.* The Court reasoned that, absent such a dividend, the minority shareholder would be left with "a block of stock which has absolutely no value." *Id.* at 126.

With these principles in mind, we are persuaded that the circuit court erred in finding that Mekhaya failed to state a claim for shareholder oppression. The court based its decision upon a finding that there was "no confirmed basis" that the alleged *de facto* dividend "was ever reviewed as [] dividends or that [Mekhaya's] salary was viewed as dividends in this matter." As the case law discussed earlier makes clear, however, the question is not whether Mekhaya's expectation in receiving a *de facto* dividend as part of his salary was ever "confirmed" or expressly declared as a dividend by Eastland. The question, rather, is whether Mekhaya's complaint, on its face, alleged facts sufficient to establish that his expectations as a shareholder were reasonable (when viewed through an objective lens) and that Appellees defeated substantially one or more of those expectations.

Mekhaya's complaint advanced such a showing. As noted earlier, Mekhaya's flagship allegation was that, as a shareholder, he expected to share in company profits by

receiving a *de facto* dividend as part of his salary. That expectation was reasonable, despite the fact that Eastland never declared officially a dividend. Thus, when Appellees terminated Mekhaya's employment and stopped paying his salary, thereby depriving him of the *de facto* dividend portion, arguably Appellees defeated substantially Mekhaya's asserted reasonable expectation as a shareholder. Those allegations are sufficient to state a claim for shareholder oppression. Again, whether Mekhaya can prove those facts is immaterial to the stage of these proceedings as they reach us here.

In addition, Mekhaya alleged that, following the termination of his employment, Eastland's board of directors continued to refuse to declare expressly a dividend, despite the fact that Eastland was "quite profitable." According to Mekhaya, instead of declaring a dividend, Eastland's board chose to pay "excessively high salaries" to Oscar and Vipa. Those actions, if proven, could be considered shareholder oppression, particularly if the majority's actions left Mekhaya with a "worthless asset."

To the extent that the circuit court may have believed that it lacked an appropriate remedy under the circumstances as pleaded, we disagree. In his prayer for relief, Mekhaya asked the court to appoint a receiver to continue operation of the company for the benefit of the stockholders until the oppressive conduct ceased, retain jurisdiction of the case for the protection of the minority stockholders, and issue an injunction to prohibit continuing acts of oppression. All of those remedies have been recognized by this Court as being within the court's powers. *Edenbaum*, 165 Md. App. at 260-61. Mekhaya asked also for compensatory damages, which, depending on the circumstances, could be awarded. *Id.* That is, if Mekhaya can prove that Eastland had been paying a "constructive" or "de facto"

dividend to its shareholders, employees or directors, that he reasonably expected to receive that benefit, and that Appellees defeated substantially that expectation, the court has the power to order "affirmative relief by the required declaration of a dividend or a reduction and distribution of capital" and award "damages to minority stockholders as compensation for any injury suffered by them as the result of 'oppressive' conduct by the majority in control of the corporation." *Id.* at 261.

### *The Breach of Fiduciary Duty*

We hold also that the circuit court erred in dismissing Mekhaya's claim for breach of fiduciary duty. The court provided, in this regard, two reasons for its decision: first, the court found that Mekhaya failed to allege a direct harm that was separate and distinct from a harm suffered by the company; and second, the court found that Mekhaya failed to allege facts that could overcome the presumption afforded by the business judgment rule. Both reasons for dismissal were erroneous.

To establish a claim for breach of fiduciary duty, "a plaintiff must show: (i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 599 (2020) (quotation marks and citations omitted). *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 346 (2009). Directors and officers of a corporation have generally a fiduciary duty to the corporation and its shareholders. *Id.* at 336; *see also* CA § 2-405.1. In addition, "Maryland common law recognizes that minority shareholders are entitled to protection against fraudulent or illegal action of the majority." *Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 697 (2007). "Especially in closely held corporations, the majority

26

shareholder owes a fiduciary duty to the minority shareholder (or shareholders) not to exercise [their] control to the disadvantage of minority stockholders." *Id.* (quotation marks and citation omitted).

Because directors/majority shareholders owe fiduciary duties to both the company and its shareholders, an action for a breach of those duties may be brought directly or derivatively, depending on "the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail." *Shenker*, 411 Md. at 346 (quotation marks and citation omitted). Where the breach relates to a fiduciary duty owed to the company, a derivative action is the appropriate course. A derivative action "permits an individual shareholder or group of shareholders to bring suit to enforce a corporate cause of action against officers, directors, and third parties where those in control of the company refuse to assert a claim belonging to it." *Id.* at 342. "In a derivative action, any recovery belongs to the corporation, not the plaintiff shareholder." *Id.* at 344. Moreover, in a derivative action, because courts avoid generally interfering with the management of a company, "the business judgment rule protects a disinterested director from liability to the corporation and its stockholders by insulating the business decisions made by the director from judicial review, absent a showing of fraud, self-dealing, unconscionable conduct, or bad faith." *Id.*

On the other hand, "a shareholder may bring a direct action, either individually or as a representative of a class, against alleged corporate wrongdoers when the shareholder suffers the harm directly or a duty is owed directly to the shareholder, though such harm also may be a violation of a duty owing to the corporation." *Id.* at 345. For instance, "[w]here the rights attendant to stock ownership are adversely affected, shareholders

27

generally are entitled to sue directly, and any monetary relief granted goes to the shareholder." *Id*. To maintain such an action, the shareholder "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004); *accord Oliveira v. Sugerman*, 451 Md. 208, 230-31 n.15 (2017) (citing *Tooley* with approval). Importantly, if the shareholder makes such a showing, "the business judgment rule does not apply." *Shenker*, 411 Md. at 345.

The question here, then, is whether Mekhaya alleged a breach of a duty owed directly to him and, if so, whether he, and not Eastland, suffered harm from that breach. If such a basis was made in his complaint, then Mekhaya's direct claim should survive a motion to dismiss, the business judgment rule being inapplicable. If, however, the harm alleged was suffered by Eastland, such that any recovery would go to Eastland and not Mekhaya, then his claim was derivative and was dismissed properly because a derivative claim must be brought in the name of the company. *Id.* at 343.

Examining the allegations contained in Mekhaya's complaint, we are persuaded that he alleged properly a direct claim. As noted earlier, Mekhaya alleged that, as a shareholder, he was owed a *de facto* dividend and that Eastland's board of directors had a fiduciary duty to continue to pay that dividend. *See Burnett v. Spencer*, 230 Md. App. 24, 37 (2016) ("The declaration of a dividend creates a debtor-creditor relationship between a corporation and its shareholders."); *see also In re Classic Coach Interiors, Inc.*, 290 B.R. 631, 636 (2002) ("[A] declared but unpaid dividend … is an asset of the shareholders to whom it is owed."). Mekhaya alleged that the board breached that duty by refusing to pay that dividend out of

28

Eastland's ample profits, instead using those profits to pay excessive salaries to Oscar and Vipa. He alleged also that Oscar and Vipa used those same profits for personal use. All of those claims were based on a fiduciary duty owed directly to Mekhaya, and any recovery (in the form of an unpaid dividend) would go directly to him.

To be sure, it remains to be seen whether Mekhaya's claims regarding the *de facto* dividend can be proven. If they cannot, that is, if Mekhaya can prove that Oscar and Vipa used Eastland's profits improperly, but cannot prove that those profits should have gone to him via a dividend, then his breach of fiduciary duty claim would be derivative and would need to be brought in Eastland's name and in accordance with the appropriate procedures for derivative claims. At this point in the proceedings, however, Mekhaya's complaint asserting a direct claim is sufficient to survive the motion to dismiss.

### *Unjust Enrichment*

For much of the same reasons, we hold that the circuit court erred in dismissing Mekhaya's claim for unjust enrichment. To succeed with a claim for unjust enrichment, a plaintiff needs to allege and then prove: (1) that a benefit was conferred upon the defendant; (2) that the defendant knew about or appreciated the benefit; and (3) that it would be inequitable to allow the defendant to retain the benefit. *Mona*, 176 Md. App. at 712-13. In Mekhaya's case, the "benefit" would be the unpaid dividend. If he can show that he was owed the dividend, that Appellees knew about or appreciated the *de facto* dividend structure, and that it would be inequitable to allow Appellees to retain the dividend, then his direct claim for unjust enrichment passes muster for purposes of the motion to dismiss. *Id.* at 724-25. If, on the other hand, he can only show that Oscar and Vipa received a

benefit from Eastland's profits, that is, if Mekhaya cannot show that that benefit should have gone to him via a dividend, then his claim would be derivative and would need to be brought in Eastland's name and in accordance with the appropriate procedures for derivative claims. In any event, as with his claim for breach of fiduciary duty, whether Mekhaya can prove his claim is immaterial at this point. His complaint sets forth the necessary elements of an unjust enrichment claim, and that claim should have survived the motion to dismiss.

Returning to the somewhat attenuated horseshoes metaphor opening this opinion, although Mekhaya's complaint may not be a "ringer" or even a "leaner," we conclude that it was close enough to survive the motion to dismiss.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**